ORIGINAL

RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN J BRAZIER (HI Bar No. 9343) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com
Email: brianbrazier@gmail.com

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 23 2013

at _11_ o'clock and _20_min. _A._ M. y
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| D. Baraka Kanaan )<br><br>              Plaintiff, )<br>     vs. )<br><br>Delta Air Lines, Inc., and Does 1-20. )<br>              Defendants. )<br>                                         ) | CASE NO. CV13 00365 KSC<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL REQUESTED<br><br>SUMMONS |

## COMPLAINT

COME NOW the Plaintiff, D. BARAKA KANAAN, by and through his undersigned counsel, and complains against Defendants DELTA AIR LINES, INC. and DOES 1-20 as follows:

## INTRODUCTION

1.    Plaintiff brings this action to end Defendant Delta's as well as its employees and agents' continued failure to comply with the Air Carrier Access Act and to compensate Plaintiff for physical and emotional injuries suffered as a result of their illegal acts.

2.    On July 27 and July 29, 2012, Mr. Kanaan, who suffers from paraparesis, a partial paralysis of his legs which renders Mr. Kanaan unable to walk, was subjected to appallingly outrageous treatment by actors, employees and/or agents of Delta Airlines.  Mr. Kanaan, who is wheelchair-bound, was forced to crawl across an airport tarmac, up and down the stairs of an airplane, down the aisle of the aircraft, and out of and into his seat on the airplane.  This outrageous conduct occurred not once, but twice – the second occurring after Mr. Kanaan's specific complaint against Defendants' conduct and Defendants' assurances that it would not happen again.

3.    Mr. Kanaan suffered intense physical and extreme emotional suffering as a result of the Defendants' actions and omissions in these instances.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

5.     This Court has personal jurisdiction over Defendants as they are corporations doing business in the State of Hawaii.

6.     This Court also has personal jurisdiction over each of the Defendants because they maintain a continuous business presence in the State of Hawai'i.

7.     Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

8.     Plaintiff BARAKA KANAAN is a natural person and a citizen of the United States, who at all material times herein did reside in the county of Maui, State of Hawai'i.

9.     Defendant DELTA AIR LINES, INC. ("Delta") was and still is a foreign airline business entity doing business in Hawai'i with headquarters located at 1030 Delta Boulevard, Atlanta, GA, 30320-6001, and at all times mentioned in this action employed and/or contracted those responsible for the actions mentioned herein.

10.    Defendants Does 1-20 are sued in both their personal and official capacity. The identity of Does 1-20 has thus far not been ascertained but Plaintiff will add

such Defendants when their identities and their role in Mr. Kanaan's complaint have been ascertained.

11.     Plaintiff has reviewed all documents available to him and has made a diligent and good faith effort to ascertain said persons' full names and identities; however, Plaintiff has been unable to ascertain the identities of said Defendants. The names, capacities, and relationships of defendants named as Doe Defendants will be alleged by amendment to this Complaint when they are revealed and thus properly identified.

12.     Plaintiff reserves the right to amend this Complaint to add such parties as his true identities and capacities are ascertained through discovery or otherwise.

13.     Defendant Delta Airlines has responsibility to control and train their agents who act on their behalf.  Delta is therefore ultimately responsible for the actions, and therefore, must assume the risks incidental to the actions of their employees.

## FACTS

14.     Plaintiff Baraka Kanaan is a former professor of philosophy at California State University, Long Beach, and the current head of the Lovevolution Foundation, a non-profit educational 501(c)3 organization.

15.     Mr. Kanaan is a disabled American.  Specifically, Mr. Kanaan suffers from paraparesis, a condition that was brought on by severe spinal injuries suffered in a

vehicle accident in 2000 and has deteriorated leaving Mr. Kanaan, currently and at all times material to this complaint, unable to ambulate.

16.    On July 26, 2012, one week before a scheduled spinal fusion operation, Mr. Kanaan was traveling from Maui to Nantucket, Massachusetts, on a series of Delta airlines flights, to participate in a conference.

17.    Even worse, Delta is (narrowly) the second largest airline in the United States following the United/Continental merger.  The company reported $36.6 billion in revenue in 2012 with a profit of $1.009 billion.  These 2012 profits represented an 18.1 % increase on the reported profits of 2011.  Delta has assets in excess of $44 billion.

18.    As he always does when he flies and despite the fact that he is not required to do so, Mr. Kanaan called several weeks in advance of his flight and spoke to a customer service representative with Delta to confirm that he is disabled, that he would be traveling with his own wheelchair, and that he required the use of an aisle chair and lift to access the aircraft because he cannot walk.

19.    The representative assured him that all was noted in the company's travel database, and that he would be received and given reasonable accommodation for his disability.

20.    The Delta flight that he was scheduled to take, Flight 4245, was cancelled on July 26, 2012 for weather-related conditions.   Mr. Kanaan was then rescheduled

by Defendants for a July 27, 2012, Delta flight from Maui to Nantucket on Flight 4110.

21.    Upon his arrival at Nantucket Airport, Mr. Kanaan was informed by one of the flight attendants that the airline did not have the required safety equipment, an "aisle chair" to bring him from his seat to the airplane door; nor did they have a lift to go down the stairs from the aircraft to the tarmac to retrieve his wheelchair.

22.    The Airline Carrier Access Act ("ACAA") and applicable federal regulations require airlines to have such equipment available in order to accommodate disabled passengers such as Mr. Kanaan.

23.    Delta did not.

24.    When Mr. Kanaan asked what his options were, the flight attendant responded, "I don't know, but we can't get you off the plane." Despite a clearly visible lift at an adjacent gate, Mr. Kanaan was forced to crawl down the aisle of the airplane, down the stairs of the aircraft, and across the tarmac to his wheelchair without any assistance from the crew or the use of any mandated safety equipment.

25.    In his nicest suit, he crawled hand over hand through the main cabin and down a narrow flight of stairs and across the tarmac to his wheelchair. There were a great number of people watching, and the experience caused Mr. Kanaan great physical and emotional suffering.

26.     During this entire shameful incident, no efforts were made to secure the lift or an aisle chair from Jet Blue or any other airline operating in the airport. And, purportedly fearful of liability, the flight crew refused to assist Mr. Kanaan, instead serving as spectators themselves.

27.     Quite obviously, this experience caused Mr. Kanaan great physical and emotional distress, pain and discomfort.

28.     Once he was in his wheelchair and had made it to the airport terminal, Mr. Kanaan called the disability desk for Delta and filed a complaint. Mr. Kanaan spoke with Doug Dole of Delta's Salt Lake City disability desk. Mr. Dole was reached at 1-800-984-9277. Mr. Kanaan was given Reference # 0062145659743 to reference the call.

29.     Insultingly, Mr. Dole offered a $100 voucher, serial #: 0060640756561, and Mr. Kanaan was promised that it would never happen again.

30.     During this call Mr. Kanaan specifically and adamantly informed Mr. Dole that he would be flying out from Nantucket to return to Maui in two days and that he would need the proper equipment for his return trip. Mr. Dole assured Mr. Kanaan that the proper equipment was available at Nantucket airport and would be made available to Mr. Kanaan for his return trip.

31.     However, two days later, Mr. Kanaan's return flight, Flight 4245, was again delayed by Defendants. And, when boarding finally began, he was again informed

that the necessary safety equipment, an aisle chair and a lift, were unavailable, but that they "could provide a piece of cardboard to put down so that his clothes wouldn't get dirty."

32.    Again, the ACAA and applicable federal regulations require airlines to have such equipment available in order to accommodate disabled passengers such as Mr. Kanaan.  Delta, for the second time, did not accommodate him, despite Mr. Dole's assurances to the contrary.   Obviously, a piece of cardboard is not satisfactory equipment to satisfy the ACAA's requirement that airlines reasonably accommodate disabled passengers.

33.    Thus, Mr. Kanaan was again forced to crawl across the tarmac, up the stairs of the aircraft, down the aisle, and hoist himself into his seat on the aircraft, which was a physically painful experience for Mr. Kanaan.  In the process he felt his spine twist and pull in awkward manners.

34.    On this second occasion, two days after the first occasion, and despite Mr. Kanaan's specific conversation with Mr. Dole, Defendants' acts and omissions again caused Mr. Kanaan great physical and emotional distress, pain and discomfort. Once again, many people watched this transpire, causing grave embarrassment to Mr. Kanaan and a feeling of dehumanization.

35.    As he did upon his arrival in Nantucket, Mr. Kanaan again observed a lift used to lower and raise disabled passengers at an adjacent gate only a few hundred feet away.

36.    No efforts were made to obtain that equipment and, other than providing a piece of cardboard, the flight crew made no effort to assist Mr. Kanaan.

37.    When Mr. Kanaan arrived home, he underwent a spinal cord fusion operation.  However, that operation was delayed and upon information and belief, the delay was attributable to injury sustained when he was forced to crawl across the tarmac, up and down the stairs, and through the aisles of the aircraft.

38.    A few days after the procedure, while he was in the hospital recovering, Mr. Kanaan again called the Delta disability desk and complained about these incidents.

38.    Such complaints are nothing new to Delta.  Just a year before, Delta received no less than 5,000 complaints against it and was ordered to pay record breaking fines for its persistent "egregious" mistreatment of disabled passengers.  Among these 2011 incidents (as they have been reported in the media) are:

- Delta left a blind woman alone in a wheelchair on a moving walkway;

- Delta failed to bring an 81 year old man to a hotel after cancelling his flight. The man had to sleep in a wheelchair;

- An elderly couple in wheelchairs missed an international flight because Delta failed to board them;

- A woman who needs a ventilator to breathe was removed from a Delta flight, which was a *return* flight, because the Delta flight crew inexplicably determined that her ventilator and medical equipment could not be brought on the plane.

39.   A 2011 DOT investigation found that:

> disability complaints filed with Delta and DOT revealed many violations of the requirement to provide assistance getting on and off the airplane.   The carrier's complaint files also showed that it frequently did not provide an adequate written response to disability complaints from passengers.   The Aviation Enforcement Officer further found that Delta also failed to properly report each disability complaint in reports filed with the Department."

40.   These incidents occurred despite Delta reportedly being fined $1.35 million in 2003 for similar violations – money which it was supposed to have spent on "improv[ing] the quality of service to disabled air travelers."  In 2009, Delta again led the airline industry in complaints, accumulating 2,377 disability-related complaints.

41.   And, the $2 million fine levied in 2011 also apparently failed to deter Delta's conduct as not only illustrated by Mr. Kanaan's case.  Had the portion of that fine been dedicated to preventing the abuse of disabled passengers, as required by the federal government, Mr. Kanaan would not have been injured.

42.   In addition, Delta's failure to adequately improve its accommodations for disabled passengers is underscored by yet another December 2012 incident wherein Delta humiliated a veteran who had lost both his legs in combat.

43.     In that case as in many, Delta's Vice President for Customer Care publicly released the following statement:

> Unfortunately, we failed in this situation.  We strive to exceed expectations with every customer, and I particularly regret when we fail a number of the military or person with a disability. . . . We are taking this *isolated* situation very seriously and doing what we can to make it right with the customer, which will help to prevent situations like this in the future.

44.     Such public vows are not uncommon for Delta.  Delta certainly creates for itself ample opportunities to utter such empty promises.  However, based on Mr. Kanaan's experience, Delta privately refuses to "make it right" when not in the direct glare of the public spotlight.  Despite its history, Delta refused to meaningfully compensate Mr. Kanaan for its outrageous conduct or otherwise rectify this situation. Instead, while Mr. Kanaan lay in a hospital bed recovering from his surgery, a Delta disability desk representative "apologized" and offered Mr. Kanaan 25,000 sky miles as compensation, presumably leaving Mr. Kanaan to bear the risk that he would again be forced to crawl while boarding and deplaning Delta's aircraft even if those sky miles were sufficient to book a flight, which they are not.

45.     Rightfully, Mr. Kanaan refused this insulting offer and asked for a more equitable response.  Yet, the Delta officials informed him that they were not authorized to offer him anything without approval from headquarters.

46.     Mr. Kanaan was then connected with Delta's corporate headquarters. There, Mr. Kanaan was told that he was speaking to the "highest person" available, a woman named Rachel (phone number 404-773-0305) who provided Mr. Kanaan with a corporate case #11862454. To literally add insult to injury, "Rachel" offered an even smaller amount of sky miles, less than half the amount of the original offer. When Mr. Kanaan declined because that offer was unsatisfactory, "Rachel" terminated the phone call, hanging up on Mr. Kanaan, saying that there was nothing more that Delta could or would do.

47.     Upon discharge from the hospital, Mr. Kanaan filed a complaint with the Federal Aviation Administration, who responded: "Thank you for contacting the Federal Aviation Administration (FAA) Aviation Safety Hotline. Your aviation safety concern has been received and the reference number is: S20120808018. Based on the information provided in your report, you should contact the Department of Transportation's Aviation Consumer Protection Division at either: 202 366-2220, or http://airconsumer.ost.dot.gov/ The FAA appreciates you taking the time to make this report and for your interest in aviation safety. Thank you for your patience and please contact the Department of Transportation for further assistance. Sincerely, Federal Aviation Administration Office of Audit and Evaluation."

48.     The FAA has made no further contact regarding the complaint and the report.

### FIRST CAUSE OF ACTION

#### Negligence *per se* or as a matter of law

#### (Violation of Air Carrier Access Act, 49 U.S.C. section 41705 et seq.)

49.     Paragraphs 1 through 48, above, are specifically incorporated as if restated verbatim herein.

50.     Delta had a statutory duty under the Air Carrier Access Act and implementing regulations to provide Plaintiff with a lift, aisle chair and other equipment or assistance as needed or requested.

51.     Delta, through its employees, breached their duty in one or more of the following ways: A. in failing, before departure, to ensure that Mr. Kanaan would be reasonably accommodated upon arrival, *i.e.*, that a wheelchair, aisle chair, and/or lift would be provided to Mr. Kanaan; B. in refusing to provide wheelchair assistance upon request; C. in refusing to provide any physical assistance to Plaintiff; D. in failing to provide an alternate reasonable method of transporting Plaintiff to the gate; E. in failing to provide alternative reasonable method of assisting Plaintiff on and off the aircraft. Failing to accommodate Mr. Kanaan is far below any standard of reasonable care.

52.     Delta's actions or omissions did cause and proximately cause the physical and mental injury to Mr. Kanaan which Mr. Kanaan did suffer.

## SECOND CAUSE OF ACTION

### Negligence

53.     Paragraphs 1 through 48, above, are specifically incorporated as if restated verbatim herein.

54.     Delta had a duty provide Plaintiff with the utmost care and diligence in performing its duties to Mr. Kanaan.

55.     Delta, through its employees, breached their duty in one or more of the following ways:  A.  in failing, before departure, to ensure that Mr. Kanaan would be reasonably accommodated upon arrival, *i.e.*, that a wheelchair, aisle chair, and/or lift would be provided to Mr. Kanaan; B. in refusing to provide wheelchair assistance upon request; C. in refusing to provide any physical assistance to Plaintiff; D. in failing to provide an alternate reasonable method of transporting Plaintiff to the gate; E. in failing to provide alternative reasonable method of assisting Plaintiff on and off the aircraft.  Failing to accommodate Mr. Kanaan is far below any standard of reasonable care.

56.     Delta's actions or omissions did cause and proximately cause the physical and mental injury to Mr. Kanaan which Mr. Kanaan did suffer.

## THIRD CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

57.     Paragraphs 1 through 56, above, are specifically incorporated as if restated verbatim herein.

58.     A reasonably prudent person in the same situation as Delta's employees and agents would have foreseen that someone in Mr. Kanaan's position would have suffered serious mental and/or emotional distress because of their actions.

59.     Mr. Kanaan did suffer serious mental and/or emotional distress because of Delta's actions.

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

60.     Paragraphs 1 through 48, above, are specifically incorporated as if restated verbatim herein.

61.     Delta, through its employees or agents, acted intentionally or recklessly.

62.     Delta's conduct, described above, was outrageous.

63.     Delta's conduct caused extreme emotional distress to Mr. Kanaan.

## FIFTH CAUSE OF ACTION

**Violation of the Americans with Disabilities Act,
42 U.S.C. section 12101, et. seq.**

64.    Paragraphs 1 through 48, above, are specifically incorporated as if restated verbatim herein.

65.    Delta had a statutory duty under the Americans with Disabilities Act not to discriminate against Plaintiff on the basis of his disability.

66.    Defendant, through its employees, breached their duty in one or more of the following ways:  A.  in failing, before departure, to ensure that Mr. Kanaan would be reasonably accommodated upon arrival, *i.e.*, that a wheelchair, aisle chair, and/or lift would be provided to Mr. Kanaan; B. in refusing to provide wheelchair assistance upon request; C. in refusing to provide any physical assistance to Plaintiff; D. in failing to provide an alternate reasonable method of transporting Plaintiff to the gate; E. in failing to provide alternative reasonable method of assisting Plaintiff on and off the aircraft.

## SIXTH CAUSE OF ACTION

**Discriminatory Practices in violation of the Hawaii Revised Statutes**

67.    Paragraphs 1 through 48, above, are specifically incorporated as if restated verbatim herein.

68.    Delta had a statutory duty under the Americans with Disabilities Act not to discriminate against Plaintiff on the basis of his disability.

69.    Delta, through its employees and agents, breached their duty in one or more of the following ways:  A.  in failing, before departure, to ensure that Mr. Kanaan would be reasonably accommodated upon arrival, *i.e.*, that a wheelchair, aisle chair, and/or lift would be provided to Mr. Kanaan; B. in refusing to provide wheelchair assistance upon request;  C. in refusing to provide any physical assistance to Plaintiff; D. in failing to provide an alternate reasonable method of transporting Plaintiff to the gate; E. in failing to provide alternative reasonable method of assisting Plaintiff on and off the aircraft.

## SEVENTH CAUSE OF ACTION

### Negligence, Negligent Training, Negligent Supervision

70.    Paragraphs 1 through 48, above, are specifically incorporated as if restated verbatim herein.

71.    Delta, through its agents and/or employees acted negligently in failing to properly abide by the regulations set for governing the transportation of disabled passengers.

72.    Defendant, through their employees, were negligent in failing to properly train and/or supervise their employees in the legally responsible way of dealing with a passenger with disabilities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     That a jury be empaneled to decide contested factual issues in this matter.

2.     Declaratory judgment that Defendants violated Mr. Kanaan's rights under the Americans with Disabilities Act, and the Air Carrier Access Act.

3.     Compensatory and punitive damages in an amount to be determined at trial.

4.     Treble damages as authorized by statute.

5.     Such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

6.     Attorney's fees, statutory fees and costs.

Dated:  July 23, 2013.

                              Respectfully submitted,


                              _____
                              Richard Holcomb (HI 9177)
                              Brian Brazier, of Counsel (HI 9343)

HID 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Hawaii

| | |
|---|---|
| D. Baraka Kanaan | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. |
| Delta Air Lines, Inc. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  1030 Delta Blvd.
Atlanta, GA  30230-6001

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Richard L. Holcomb
Brian Brazier of Counsel
Holcomb Law, LLLC
1136 Union Mall
Suite 808
Honolulu, HI  96813

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: _____JUL 2 3 2013_____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: